UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                          2:02-cr-35-FtM-29DNF

KEVIN ERIC PERRY
_____

### OPINION AND ORDER

_____This matter comes before the Court on a Petition alleging that defendant Kevin Perry violated the terms and conditions of his supervised release.  The Petition alleges that defendant committed new criminal conduct while on supervision.  Specifically, it is alleged that on April 22, 2006, defendant committed Aggravated Battery with a Deadly Weapon on four individuals, Aggravated Assault with a Deadly Weapon on a fifth person, and Possessed a Firearm, all in Collier County, Florida, and all in violation of the terms and conditions of his supervised release.  The Court conducted an evidentiary hearing on April 29 and 30, 2008, and heard the testimony of thirteen witnesses.  The Court heard closing arguments on May 5, 2008.  On May 12, 2008, the Court conducted a status conference at which counsel for both sides corrected some information concerning the medical records of witness Caesar Riley.

On May 5, 2008, the government moved to dismiss the allegation in paragraph five of the Petition relating to the Aggravated Assault.  Defendant did not object, and the Court granted the

motion and dismissed the violation alleged in paragraph five of the Petition.

## I.

As a preliminary matter, defendant argues that the standard of proof is beyond a reasonable doubt in a supervised release violation hearing, at least where the alleged violations constitute new criminal offenses.  The federal statute provides that a court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the person violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).  Nothing in the case law suggests that a higher standard should be used where the alleged violation is itself a new criminal act, particularly since the post-revocation penalties are attributed to the original conviction, see, e.g., Johnson v. United States, 529 U.S. 694, 700 (2000), and the burden of proof at an original sentencing is preponderance of the evidence.  United States v. Ndiaye, 434 F.3d 1270, 1300 (11th Cir. 2006).  The Court therefore finds that the government's burden is by a preponderance of the evidence.

## II.

The evidence established that defendant Kevin Perry was convicted of conspiracy to possess with intent to distribute fifty grams or more of cocaine base, and sentenced to 51 months imprisonment.  Defendant began his supervised release on December

30, 2005, and was on supervised release at all times relevant to the events involved in this proceeding.

In the early morning hours of April 22, 2006, a party was being held at the Ridge Port Pub in Naples, Florida (the Pub). Two to three hundred persons were in attendance, and the Pub was generally crowded and relatively dark inside. A shooting took place in the Pub after 1:00 a.m. on April 22, 2006. Multiple shots were fired, and four people suffered gunshot wounds. Caesar Riley a/k/a Sqeak (Riley) was shot three times, and is paralyzed as a result. Nicole Brice was shot in the pelvic/buttocks area with a shot that went clear through. Claudyson Angervil was shot in the right thigh, and the shot also went clear through. Johnathan Corbitt was shot in the left forearm, where the bullet is still lodged.

While many details were inconsistent from the testimony of the witnesses, the material facts which the Court finds to be credible as to the events in the Pub establish that defendant Kevin Perry fired the shots which wounded four people.

At some point after 1:00 a.m. defendant Perry and Riley were both towards the back of the Pub in relatively close proximity to one another. Riley and Perry had a history of ill-feelings toward one another. They began "trash-talking" back and forth to each other, and were angry. Defendant's cousin, Napoleon Fuller, a/k/a Nink Nink, saw the argument from where he was standing in the Pub, went and placed himself physically between the two, and told them

-3-

several times to "chill out."  Fuller then left the two and moved
to the bar.  Within 20-30 seconds of the time Fuller left this
peace-keeping mission, he heard multiple shots being fired.  Fuller
ran for the Pub door, and never saw a gun or who was shooting.

Riley testified that he and Perry had a history of bad
feelings, beginning years before when Perry had been an informant
in a state criminal case against Riley, and more recently when
Riley had engaged in a fight with Perry.  Riley testified that he
and Perry were trash-talking for a short period of time when Fuller
split them up.  As Fuller was leaving, Riley saw Perry take a gun
from his pocket and shoot at him.  Riley ran towards the front of
the Pub, but was hit by the first shot.  Riley was ultimately hit
by three shots (in the elbow, the side, and the neck) although more
shots were fired.  As a result of his injuries, Riley is paralyzed
from the chest down.  Riley had used marijuana on at least April
21, had consumed about two beers, and had a blood-alcohol level of
.033 when tested at the hospital; one witness (John Ross, a/k/a Pee
Wee) testified Riley had used cocaine at the Pub.  The Court finds
Riley's testimony about the shooting incident and his
identification of Perry to be credible.

Dennis Harvey (Harvey) testified that he knew both Perry and
Riley.  Harvey was in the back area of the Pub near Riley, and
observed, but did not hear, the argument between Riley and Perry.
Harvey testified at the evidentiary hearing that he heard shots,
but did not see who fired the shots; he further testified he did

-4-

not want to be involved in this matter.  Harvey's in-court testimony was contradicted by a recorded sworn statement he gave to Sgt. Sawyer outside the Pub at 2:08 a.m. (Government's Exhibit 23, 23A.)  In this sworn statement, Harvey stated that Riley and Perry were having an altercation regarding a fight they had earlier in the year, they were trash-talking to each other, and that Perry had pulled a gun and began shooting.  Harvey described the gun as a silver handgun, and said that Perry was pointing it at Riley, and fired it about six times.  Perry also ran behind the crowd shooting.  Harvey later gave a deposition in which he stated that his sworn statement to Sgt. Sawyer had simply repeated the rumors he had heard that morning, and he had not seen anything personally.

The Court credits the content of Harvey's sworn statement over inconsistent statements in the deposition and at the in-court hearing.  The content of the sworn statement established that it was based on Harvey's personal observation.  For example, he described the gun when asked what it looked like, but said he couldn't tell if it was a revolver or semi-automatic; he said it looked like Perry was pointing the gun at Riley; and he quoted specific language he heard in the trash talking between Perry and Riley.  More importantly, Harvey specifically said in the sworn statement that he had seen the events.  He told Sgt. Sawyer he had seen Riley and three other people who he did not know get shot, but he did not see where Perry went after he left shooting from behind the crowd.  When Harvey was asked if he had seen Fuller or Perry

get into a car, Harvey said he had not seen that.  When asked if there was anything else he wanted to add, Harvey said "That's about it . . . That I seen."  The Court finds that this statement as to the shooting was credible, and does not credit his in-court testimony to the extent it is inconsistent with the prior statement.

The testimony of the three other shooting victims was credible as to the events of the shooting, but did not establish who did the shooting.  Nicole Brice testified that she was in front of the bar when she was bumped rudely by Riley from behind.  She heard shots, but did not see who did the shooting and did not initially realize she had been hit.  She eventually went through the kitchen to the outside behind the Pub, where other persons assisted her. Claudyson Angervil was sitting on a booth near the back of the Pub and was shot in his right thigh.  He did not know any of the others, had not seen a fight, and essentially did not see anything relevant.  John Corbitt heard shots being fired, and was hit in his left forearm.  He did not see who fired the shots.

Helen Dardzinski testified she was a bartender at the Pub that night and saw a relatively minor altercation at about last call. Shortly thereafter she saw a person draw a gun from below his waist and fire the first shot.  There were other shots fired, but she did not see who fired those shots.  On May 12, 2006, she identified defendant Perry's picture in a six-picture photo spread as the person who fired the first shot.  After listening to recordings of

Ms. Dardzinski's prior statements, the Court is unable to credit this testimony.  It is clear that she does not want to be involved, and her prior statements and her in-court testimony seemed to vary according to who was asking the questions.  Her description of how she identified the photograph varied, and was inconsistent with the process described by Sgt. Brian Sawyer.  In the end, the Court concludes that her testimony is simply not reliable.

Jermila Griffin was in the back center of the Pub and saw someone she described as being Haitian fire five or six shots. This person was coming in the front of the Pub and ran to the back. Ms. Griffin has known defendant Perry for over twenty years, and knows that he was not the shooter.  She gave a statement to Sgt. Sawyer after the incident which was consistent with her testimony at the hearing.  The Court does not find this account of the events credible, even though it was consistent with the prior statement. The testimony is inconsistent with that given by any other witness, including testimony the Court finds to be credible as to defendant Perry's involvement.  While defendant argues to the contrary, the Court does not find that the physical evidence supports this testimony.

Finally, defendant Perry gave a statement to Sgt. Sawyer at the police station about thirteen hours after the shooting.  Perry stated he had left the Pub prior to any shooting, and was not involved in the shooting in any way.  The Court does not find this

statement to be credible.  It is inconsistent with evidence the Court has found to be credible.

Accordingly, it is now

**ORDERED**:

1.  The government's Motion to Dismiss Paragraph 5 is **GRANTED,** and Paragraph 5 of the Petition is **DISMISSED.**

2.  The Court finds that the United States has shown by at least the preponderance of the evidence that defendant Kevin Eric Perry committed Aggravated Battery with a Deadly Weapon against Caesar Riley, Aggravated Battery with a Deadly Weapon against Nicole Brice, Aggravated Battery with a Deadly Weapon against Claudyson Angervil, and Aggravated Battery with a Deadly Weapon against John Corbitt, and that he possessed a firearm while on supervised release.

3.  Defendant's sentencing will be held on **May 23, 2008, at 10:00 A.M.** before the undersigned, in **Courtroom A, Sixth Floor,** of the United States Courthouse, 2110 First Street, Fort Myers, Florida.

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of May, 2008.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record
U.S. Probation
U.S. Marshal
DCCD